UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT LAMICHHANE, | Case No.  1:26-cv-00324-JLT-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CHRISTOPHER CHESTNUT, *et al.*, | (Doc. 1) |
| Respondents. | **7-Day Objection Period** |

Petitioner Amit Lamichhane ("Petitioner"), a federal immigration detainee proceeding by counsel, initiated this action by filing a complaint and petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  The presiding district judge converted Petitioner's application for temporary restraining order to a preliminary injunction and granted the preliminary injunction on February 4, 2026, ordering Petitioner's immediate release from custody.  (Doc. 11).

On the merits of the petition, the parties declined to submit additional briefing following issuance of the preliminary injunction. *See* (docs. 11-13).  For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted in part as to Petitioner's procedural due process claims.

I.      **Relevant Background**

On January 15, 2026, Petitioner filed the instant petition while in custody of the Immigration and Customs Enforcement ("ICE") at the California City Detention Facility in California City,

1

alleging that his re-detention by immigration authorities on December 12, 2025, following his initial encounter and release, violates federal statutory and constitutional law.  *See* (Doc. 1 ¶ 13). Respondents are Christopher Chestnut (Warden, California City Correctional Center), Todd Lyons (Acting ICE Director), Kristi Noem (Secretary of United States Department of Homeland Security), and Pamela Bondi (Attorney General of the United States) (collectively, "Respondents").  *Id.* ¶¶ 15-18.

In granting a preliminary injunction, the Court ordered that: (1) because the government has no evidence that Petitioner poses either a flight risk or a danger to the community, Petitioner shall be released immediately from DHS custody without the imposition of any additional restrictions unless that is determined to be necessary at a later custody hearing; (2) Respondents were permanently enjoined and restrained from rearresting or re-detaining Petitioner absent compliance with constitutional protections; (3) the bond requirement of Federal Rule of Civil Procedure 65(c) is waived; (4) the parties submit a joint proposed briefing schedule discussing the abeyance of further proceedings on the merits pending the Ninth Circuit appeal of *Rodriguez Vasquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); (5) the government is permitted to file a further brief on the merits of the petition.  (Doc. 11 at 6-7).

The parties failed to file a joint report as directed and no party filed additional briefing. Accordingly, the petition is deemed fully briefed and submitted for decision before the undersigned. *See* Local Rule 230(g)).

## II.      Governing Authority

### A.      The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  *See* 28 U.S.C. § 2241.  A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner

2

"challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

**B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

> **1.    Full Removal Proceedings and Discretionary Detention (§ 1226)**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).
>
> "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that

noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

## 2.    Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the

4

United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full

removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.   The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

*///*

### C.    Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

> Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**

> 8 U.S.C. § 1182(d)(5)(A).

*Id*. at 1133 (emphasis added).  *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion.  *Id*. at 1146-47.  An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted).  Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)).  8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where

the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146. And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added). Other courts, including this Court, have held similarly. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically,

accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

**III.    Exhaustion**

    **A.    Governing Authority**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

    **B.    Analysis**

Petitioner contends in his petition that the prudential exhaustion requirement should be waived because it would be futile and Petitioner will suffer irreparable harm. (Doc. 1 ¶ 19). Petitioner argues that it would be futile to seek a bond hearing from an immigration judge as his request would be summarily denied based on the government's current interpretation of the Board of Immigration Appeal's ("BIA") recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216

(B.I.A. 2025).  *Id.* ¶ 20.

Respondents do not address exhaustion in their response to the Court's order to show cause and in opposition to Petitioner's motion for TRO, and, as noted above, have elected not to brief on this issue further.  *See* (Docs. 9, 12).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under § 1225(b) and they do not address exhaustion of administrative remedies in their opposition to the petition.  *See Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has recently held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile.  *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not object to and do not otherwise address Petitioner's arguments that exhaustion should be waived, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.  *See, e.g, Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

///

10

**IV.      Discussion**

Petitioner asserts four causes of action in his petition: violation of substantive due process under the Fifth Amendment to the U.S. Constitution (Claim 1); violation of procedural due process under the Fifth Amendment to the U.S. Constitution (Claim 2); violation of unlawful arrest under the Fourth Amendment to the U.S. Constitution (Claim 3); and violation of the Administrative Procedure Act ("APA") (Claim 4).  (Doc. 1 at 19-23).  As set forth below, because the undersigned finds that Respondents have violated Petitioner's constitutional rights to procedural due process, and because Petitioner's other claims seek the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned declines to address Petitioner's other claims.

**A.      Procedural Due Process**

1.      Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'"  *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'"  *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746).  "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'"  *Mathews*, 424 U.S. at 902 (citation omitted).  "The

11

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

2.     Analysis

The undersigned finds that, given the government stands solely on its arguments already considered by the Court in its order granting Petitioner's converted motion for a preliminary injunction, and for the same reasons the Court found that Petitioner is likely to succeed on the merits of his procedural due process claim, Petitioner's petition for writ of habeas corpus as to his procedural due process claim should be granted.

In the Court's order granting Petitioner's converted motion for a preliminary injunction, the Court found that Petitioner demonstrated a likelihood of success on the merits of his procedural due process claim. (Doc. 11 at 5). The Court rejected Respondents' blanket argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2)(A), noting that "[c]ourts nationwide, including this one, have overwhelmingly rejected Respondents' new legal position and found the DHS policy unlawful." *Id.* at 4 (citing cases). As to Petitioner's arguments that his continued detention violates his procedural due process rights, the Court reasoned that Respondents failed to contend with the liberty interest created by the fact that Petitioner was released on recognizance by ICE in November of 2024 pending completion of his

removal proceedings before the government adopted its recent interpretation of the governing statutes (§ 1225(b)(2) and § 1226) such that the government's new interpretation does not apply here and Petitioner's detention is not "mandatory" in this action.  *Id.* at 4-5; *see Pinchi*, 792 F. Supp. 3d at 1032 ("…even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody[,] she has a protected liberty interest in remaining out of custody[.]") (citations omitted); *Doe*, 2025 WL 691664, at *4; *see also Padilla*, 704 F. Supp. 3d at 1172 ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

In applying the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)—which "requires consideration of three distinct factors: [(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"—the Court found that Petitioner has a substantial private interest in being out of custody.  (Doc. 11 at 5).  The Court reasoned that during his time on parole, Petitioner developed a substantial private interest in being out of custody and his detention denies him that liberty interest.  *Id.* (citing *Zadvydas*, 533 U.S. at 690).  Further, the Court found that Respondents offer little to rebut Petitioner's due process claim and do not provide any justification for detaining Petitioner as "nothing in the record suggests a change in circumstance material to the question of whether Petitioner is a danger to public safety or a flight risk."  *Id.*  In consideration of the last *Mathews* factor, the Court concluded that the government's interest in detaining Petitioner without proper process is slight.  *Id.*  Therefore, under *Mathews*, because Petitioner has shown the procedures or lack thereof as applied to Petitioner are not sufficient to protect his liberty interest, the Court concluded that Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim.  *Id.*

Because the government does not raise any new argument in response to the Court's findings on Petitioner's procedural due process claim and, thus, does not rebut that the merits of Petitioner's procedural due process claim are likely to succeed, the undersigned will recommend that the Court grant Petitioner's petition as to his procedural due process claim.

## B.    Petitioner's Other Claims

Because the undersigned finds that the Court may grant the full relief Petitioner seeks—for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof—in recommending that the writ should issue as to Petitioner's claim for violation of procedural due process, the undersigned declines to address Petitioner's other claims which seek the same or similar relief.

## V.    Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED in part as to Petitioner's procedural due process claim arising under the Fifth Amendment to the U.S. Constitution (Claim 2).

2. The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.

14

The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 18, 2026**   _____
UNITED STATES MAGISTRATE JUDGE